Brian R. Chavez-Ochoa (CA Bar No. 190289)*
brianr@chavezochoalaw.com
**Chavez-Ochoa Law Offices, Inc.**
4 Jean Street, Suite 4
Valley Springs, CA 95252
Telephone: (209) 772-3013

Philip A. Sechler (VA Bar No. 99761)**
psechler@ADFlegal.org
Mathew W. Hoffmann (VA Bar No. 100102)**
mhoffmann@ADFlegal.org
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4656

Mercer Martin (AZ Bar No. 038138)**
mmartin@ADFlegal.org
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028

*Counsel for Plaintiffs*

*Local Counsel
**Pro hac vice application filed simultaneously*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rumble Inc.**, and **Rumble Canada Inc.**, | Civil No. _____ |
| *Plaintiffs,* | |
| v. | |
| **Rob Bonta**, in his official capacity as Attorney General of the State of California, and **Shirley N. Weber**, in her official capacity as California Secretary of State, | **COMPLAINT** |
| *Defendants.* | |

**JURISDICTION**

1.     California's new law, AB 2655, imposes liability on Plaintiffs Rumble Canada Inc. and Rumble Inc. for curating and publishing speech. It therefore violates the First and Fourteenth Amendments to the United States Constitution, as well as Article VI's Supremacy Clause because it is preempted by Section 230 of the Communications Decency Act of 1996. This Court has subject-matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

**INTRODUCTION**

2.     Rumble Canada Inc., an indirect subsidiary of Rumble Inc., operates Rumble.com (collectively "Rumble"), a large video-sharing platform that curates and publishes a variety of content, including political commentary. Rumble exists to foster a free and open internet, and it does not remove content unless the content violates its terms and conditions.

3.     But now, California deputizes Rumble to restrict its users' speech, even if that speech does not violate Rumble's terms and conditions. At the same time, California requires Rumble to alter the content and viewpoint of its own speech and compel it to communicate the State's message.

4.     California's new law, AB 2655, mandates that Rumble remove and label content California officials consider "reasonably likely to harm the reputation or electoral prospects" of candidates or "reasonably likely to falsely undermine confidence" in an election.

5.     The law forces Rumble to undertake the impossible task of training its team to recognize and then remove and label content based on inherently vague and subjective terms on which even pollsters and government officials cannot agree, such as what content may be "likely to harm" electoral prospects or may likely undermine confidence in an election.

6.     And when Rumble inevitably is not able to comply to the satisfaction of everyone, AB 2655 authorizes individuals to file suits against it for equitable relief.

7.     Neither the Constitution nor Section 230 of the Communications Decency Act allows California to alter and compel Rumble's speech while also mandating that it censor its users' speech. As such, this Court should enjoin AB 2655 and declare it unlawful.

**VENUE**

8.     Venue lies in this district and division pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to this lawsuit occurred in this district and division and the California government and its agencies are citizens of every district in California.

**PARTIES**

*Plaintiffs*

9.     Plaintiff Rumble Canada Inc., headquartered in Toronto, Canada, is a wholly owned indirect subsidiary of Plaintiff Rumble Inc., which is headquartered in Longboat Key, Florida. Rumble Canada Inc. is the owner and operator of the Rumble video-sharing platform.

10.     Rumble is a video-sharing platform where users can upload, view, and comment on videos. Rumble is accessible from California. For the past 12 months, Rumble has had over one million monthly active users in California.

*Defendants*

11.     Defendant Robert Bonta is the Attorney General of the State of California and is authorized to enforce California's laws, including AB 2655. Cal. Const. art. V, § 13; Cal. Elec. Code § 20516.

12.     Defendant Shirley N. Weber is the California Secretary of State. She has authority to administer, enforce, and implement California's Elections Code, including AB 2655. Cal. Gov't Code § 12172.5.

13.     Under AB 2655, the Secretary of State is an "elections official." Cal. Elec. Code § 20512(g)(2).

Complaint 2

14.     Defendants Bonta and Weber "may seek injunctive or other equitable relief" for violations of AB 2655. Cal. Elec. Code §§ 20515(b), 20516.

15.     All defendants are named in their official capacities.

## FACTUAL BACKGROUND

**I.     Rumble.com is a video-sharing platform that exercises editorial discretion over political speech by its users.**

16.     Rumble's mission is to protect a free and open internet.

17.     In 2013, Chris Pavlovski (now Rumble's Chairman and CEO) founded Rumble.

18.     Rumble sought to empower small content creators and give them a platform to express themselves.

19.     Rumble allows video content creators to upload their videos to the Rumble platform. Anyone with an internet connection can view videos on Rumble's platform. Rumble requires an account for a person to upload a video to its platform, to comment on videos, or to participate in live chats. Any person can make a free Rumble account. When this Complaint refers to Rumble "users," it includes any person who engages on the Rumble platform, such as people who view videos on Rumble, people who upload content to Rumble, and Rumble accountholders.

20.     Rumble currently hosts millions of hours of publicly available video on its platform, rumble.com.

21.     Although Rumble promotes and seeks to protect free speech, it also has a robust content moderation policy that it enforces aggressively, removing from its platform content that violates that policy and banning users who repeatedly post content that violates its policy.

22.     Rumble manages its video-sharing service through its terms and conditions. A true, accurate, and complete copy of its current Terms and Conditions of Use is attached as Exhibit 1.

23.     To create an account, a user must agree to abide by these terms and conditions.

24.     Under the terms and conditions, Rumble retains "the absolute right (but not the obligation) to prohibit, refuse, delete, move and edit Content and material for any reason, in any manner, at any time, without notice" to the content creator. Ex. 1 at 7 (https://rumble.com/s/terms).

25.     The terms and conditions prohibit the following, among other categories:

- "Content or material that is pornographic, obscene, or of an adult or sexual nature";

- "Content or material that is grossly offensive to the online community, including but not limited to, racism, anti-semitism and hatred";

- Content or material that "[p]romotes, supports, or incites violence or unlawful acts";

- "Content or material that exploits children under the age of 18 or posts or discloses any personally identifying information about any person at any age, including but not limited to personally identifying information about children under the age of 18"; and

- "Any other Content or material that Rumble in its sole, unfettered, and arbitrary discretion, determines is undesirable on the Rumble Service." Ex. 1 at 6.

26.     Rumble does not restrict political speech unless it violates a provision of its terms and conditions.

27.     Numerous content creators generate a substantial volume of digitally created or digitally altered content that pervades the internet. Such content exists on a wide variety of platforms, including video-sharing platforms like YouTube and Rumble, among others. Rumble does not possess the technology to automatically identify digitally altered images or audio shared by users and would have to incur significant expense to develop or acquire such technology. Even then, it is unlikely that Rumble would be able

to identify all content that might arguably violate AB 2655, particularly given the law's vagueness. Therefore, Rumble would be subject to litigation to defend itself against meritless claims.

## II.    California lawmakers recognized that AB 2655 restricts core political speech and faces serious challenges.

28.    Committees in both chambers of the California legislature acknowledged that AB 2655: (1) imposes serious burdens on speech and would be "vulnerable" to a constitutional challenge; (2) would face legal challenge under Section 230 of the Communications Decency Act; and (3) places onerous burdens on certain platforms.

29.    As originally proposed, AB 2655 contained an exception for entities protected by Section 230. But legislators soon deleted that language from the bill.

30.    In April 2024, the Assembly Committee on Judiciary published a report conceding that the law "would interfere with both the expression and reception of information based upon its content." Ex. 2 at 4. A true and accurate copy of excerpts of this report is Exhibit 2.

31.    The Committee recognized this was "potentially problematic" because the bill "single[d] out particular content" that "relates to political candidates and elections," which normally receives full constitutional protection. *Id*. The Committee admitted that "[i]t is difficult to imagine any content more related to 'political expression' and 'discussion of public issues' than content about candidates and elections." *Id*. The Committee also acknowledged that "opponents of this bill"—including "the industry groups and the ACLU"—"believe that with no sure means to determine what is 'materially deceptive,' the platforms will err on the side of blocking content, thus burdening more speech than is necessary." *Id*.

32.    The Committee recognized that opponents claimed the bill was not narrowly tailored and that "it will be a court – not the findings and declarations of the bill – that will determine whether the bill is narrowly tailored. The court may consider, for example,

if there are other less restrictive and more effective means of protecting election integrity." *Id*. at 5.

33.     When surveying cases pending before the United States Supreme Court (as of April 2024), the Committee stated that "there is no obvious or certain answer as to whether this bill violates the First Amendment." *Id*. And the Committee understood that the proper "remedy for false speech is more true speech, and false speech tends to call forth true speech." *Id*. at 4.

34.     The Committee concluded that "this bill may also be preempted by Section 230 of the federal Communications Decency Act." *Id*. That's because Section 230 grants "platforms the right to moderate content on their platforms and immunizes them from liability for content posted by the third party." *Id*. at 6.

35.     Finally, the Committee noted that industry groups criticized AB 2655 for assuming that online platforms "definitively know whether any particular piece of content has been manipulated in such a way that is defined under the bill" and have the tools and expertise to make that judgment. *Id*. at 8.

36.     It also observed the ACLU's fears that given "the prospect of vetting millions of different posts to determine if they are 'materially deceptive and digitally modified or created,'" large online platforms will "instead choose to aggressively censor or prohibit speech out of caution." *Id*. at 9.

37.     In June 2024, the Senate Judiciary Committee published a report concluding that "it is inherently difficult to predict whether this law will be struck down for violating the protections of the First Amendment," especially "in the more politically charged federal judiciary of the day." *Id*. at 10. But, the Committee believed, "it is safe to say [AB 2655] will likely face legal challenge and arguably be vulnerable thereto." Ex. 3 at 9. A true and accurate copy of excerpts of this report is Exhibit 3.

38.     The Committee also acknowledged that AB 2655 would "likely" face a preemption challenge under Section 230. *Id*. It conceded that AB 2655 "provides for the potential liability of platforms for failing to block and prevent certain content from being

posted or shared by users" even though Section 230 "immunize[s] internet platforms from virtually all suits arising from third-party content." *Id*. at 3 (cleaned up).

39.     Finally, the Committee noted "concerns that the bill presupposes a level of sophistication for technology that can detect AI-generated or manipulated content that simply does not exist." *Id*. at 10.

40.     In the final Assembly Floor Analysis in August 2024—shortly before the bill became law—the California legislature still acknowledged the law may be unconstitutional. That analysis recognized the law "burdens core political speech," would be subject to strict scrutiny under the First Amendment, and might not be "adequately protect[ed] … against a constitutional challenge." Ex. 4 at 3. A true, accurate, and complete copy of the Assembly Floor Analysis is Exhibit 4.

41.     Yet the California legislature still passed AB 2655 with supermajorities in both chambers.

42.     Governor Gavin Newsom signed the bill on September 17, 2024, and AB 2655 goes into effect on January 1, 2025.

**III.     AB 2655 applies to Rumble.**

43.     AB 2655 applies to "large online platform[s]." Cal. Elec. Code § 20512(h).

44.     A large online platform is defined as "a public-facing internet website, web application, or digital application, including a social media platform[,] … video sharing platform, advertising network, or search engine that had at least 1,000,000 California users during the preceding 12 months." Cal. Elec. Code § 20512(h).

45.     Rumble qualifies as a "large online platform" under AB 2655.

46.     The law targets "materially deceptive content," which "means audio or visual media that is digitally created or modified, and that includes, but is not limited to, deepfakes and the output of chatbots, such that it would falsely appear to a reasonable person to be an authentic record of the content depicted in the media." Cal. Elec. Code § 20512(i)(1).

47.     AB 2655 requires large online platforms to take three actions with respect to "materially deceptive content."

48.     *First*, AB 2655 requires large online platforms to "provide an easily accessible way for California residents to report" that content should be removed or labeled as "manipulated" and "not authentic." Cal. Elec. Code §§ 20515(a), 20514(c). This is the "Reporting Requirement."

49.     Large online platforms must also respond to the person reporting the content within 36 hours "describing any action taken or not taken … with respect to the content." Cal. Elec. Code § 20515(a).

50.     *Second*, AB 2655 demands that large online platforms "develop and implement procedures for the use of state-of-the-art techniques to identify and remove materially deceptive content if" four criteria are met. Cal. Elec. Code § 20513(a). This is the "Removal Requirement."

51.     The criteria are: (1) the content has been reported under the Reporting Requirement; (2) the content falls within one of three categories of "materially deceptive content"; (3) the content is posted within the applicable timeframe; and (4) the large online platform "knows or acts with reckless disregard of the fact that the content meets the" prior three requirements. Cal. Elec. Code § 20513(a)(4).

52.     The three categories of "materially deceptive content" prohibited by the Removal Requirement are

   a. "A candidate for elective office portrayed as doing or saying something that the candidate did not do or say and that is reasonably likely to harm the reputation or electoral prospects of a candidate";

   b. "An elections official portrayed as doing or saying something in connection with the performance of their elections-related duties that the elections official did not do or say and that is reasonably likely to falsely undermine confidence in the outcome of one or more election contests"; or

c. "An elected official portrayed as doing or saying something that influences the election that the elected official did not do or say and that is reasonably likely to falsely undermine confidence in the outcome of one or more election contests." Cal. Elec. Code § 20513(a)(2).

53. Large online platforms must remove the content within 72 hours of receiving a report. Cal. Elec. Code § 20513(b).

54. Large online platforms must also identify, "using state-of-the-art techniques," and remove "any identical or substantially similar materially deceptive content" that they had previously removed upon discovery that the content has been reposted. Cal. Elec. Code § 20513(c).

55. The Removal Requirement's applicable timeframe runs from "120 days before an election in California and through the day of the election." Cal. Elec. Code § 20513(e)(1). But if the content "pertains to elections officials" the timeframe extends from 120 days before an election to 60 days after. Cal. Elec. Code § 20513(e)(2).

56. *Third*, AB 2655 requires large online platforms to "develop and implement procedures for the use of state-of-the-art techniques to identify materially deceptive content" and label it if three criteria are met. This is the "Labeling Requirement."

57. The criteria are: (1) the content has been reported under the Reporting Requirement; (2) the content is either (i) "materially deceptive content" under the Removal Requirement but posted outside that Requirement's timeframe, or (ii) the content is "materially deceptive content" and appears in an "advertisement" or "election communication" that is not subject to the Removal Requirement; and (3) the large online platform "knows or acts with reckless disregard for the fact that the content meets the" prior two requirements. Cal. Elec. Code § 20514(a).

58. AB 2655 defines "advertisement" as a "communication that a large online platform knows is authorized or paid for with the purpose of supporting or opposing a candidate for elective office." Cal. Elec. Code § 20512(a).

59.     An "election communication" is a "communication" that is not an "advertisement" but "concerns" a "candidate for elective office," voting in California, the canvass of the vote in California, equipment related to a California election, or electoral college proceedings in California. Cal. Elec. Code § 20512(e).

60.     Because the Labeling Requirement applies to "materially deceptive content" that appears in an "advertisement" or "election communication" that is not subject to the Removal Requirement, it applies to content that is not reasonably likely to harm the reputation of a candidate or falsely undermine the confidence in the outcome of an election. Cal. Elec. Code § 20514(a)(2).

61.     The Labeling Requirement forces large online platforms to label the content within 72 hours of discovery or receipt of a report; that label must state: "This [image, audio, or video] has been manipulated and is not authentic." Cal. Elec. Code § 20514(b)–(c).

62.     The Labeling Requirement also forces large online platforms to "permit users to click or tap on [the label] for additional explanation about the materially deceptive content in an easy-to-understand format." Cal. Elec. Code § 20514(d).

63.     The Labeling Requirement applies "regardless of the language used in the content" and mandates that large online platforms label the content both in English and the language used. Cal. Elec. Code § 20517.

64.     The Labeling Requirement's timeframe runs from "six months before an election in California and through the day of the election." Cal. Elec. Code § 20514(e)(1). If the "content depicts or pertains to elections officials, the electoral college process, a voting machine, ballot, voting site, or other equipment related to an election, or the canvass of the vote," the timeframe extends from six months before an election to 60 days after the election. Cal. Elec. Code § 20514(e)(2).

65.     "A candidate for elective office, elected official, or elections official"— including the Secretary of State—who has filed a report with a large online platform

"may seek injunctive or other equitable relief" to enforce the Reporting Requirement, the Removal Requirement, or the Labeling Requirement. Cal. Elec. Code § 20515(b).

66.     Likewise, the Attorney General, District Attorney, or City Attorney "may seek injunctive or other equitable relief" to enforce the Reporting, Removal, or Labeling Requirements. Cal. Elec. Code § 20516.

67.     By authorizing the government to coerce large online platforms to remove and label content through a reporting process, AB 2655 uses governmental authority and the threat of punishment to coerce private parties like Rumble into punishing or suppressing speech based on its content and viewpoint.

68.     Though AB 2655 applies to large online platforms in these ways, the law makes many exceptions.

69.     For example, AB 2655 does not apply to online platforms with fewer than 1,000,000 California users during the preceding 12 months.

70.     AB 2655 also does not apply to certain online newspapers, magazines, or periodicals that publish "materially deceptive content" if the publisher includes a disclosure. Cal. Elec. Code § 20519(a).

71.     AB 2655 does not apply to a "broadcasting station that broadcasts any materially deceptive content" if the station includes a disclosure. Cal. Elec. Code § 20519(b)(1).

72.     AB 2655 does not apply to a broadcasting station that is paid to broadcast "materially deceptive content" in some situations. Cal. Elec. Code § 20519(b).

73.     AB 2655 does not apply to "[m]aterially deceptive content that constitutes satire or parody." Cal. Elec. Code § 20519(c). But it does not define the terms "satire" or "parody."

74.     The Removal Requirement does not apply to "candidate[s] for elective office" who "portray[ ]" themselves "as doing or saying something that the candidate did not do or say" if the content is labeled as "manipulated." Cal. Elec. Code § 20513(d).

75.   AB 2655 applies only to "materially deceptive content" concerning certain candidates—i.e., to persons running for a voter-nominated office as defined in Cal. Elec. Code § 359.5(a), persons running for President or Vice President of the United States, and persons running for the office of Superintendent of Public Instruction. Cal. Elec. Code § 20512(c).

76.   "Materially deceptive content" about candidates who do not meet these criteria is not prohibited.

77.   AB 2655 defines "[e]lection in California" to mean "any election where a candidate … is on the ballot, and any election where a statewide initiative or statewide referendum measure is on the ballot." Cal. Elec. Code § 20512(f).

## IV.   Section 230 of the Communications Decency Act already regulates content moderation.

78.   Long before California passed AB 2655, in 1996, Congress enacted Section 230 of the Communications Decency Act. Both statutes regulate a large online platform's liability for content displayed on its site.

79.   Section 230 regulates "provider[s]" of an "interactive computer service." It defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

80.   Section 230 states that no "provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by" a content creator or commenter. 47 U.S.C. § 230(c)(1).

81.   Rumble is an "interactive computer service" under Section 230, and Plaintiffs Rumble, Inc. and Rumble Canada Inc. are "provider[s]" of an "interactive computer service."

82.   The Ninth Circuit has stated that "[t]he act of publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024) (cleaned up). It accordingly held that "Section 230 prohibits holding companies responsible for moderating or failing to moderate content." *Id.* at 1182.

83.   Thus, while AB 2655 imposes liability on a platform for failing to moderate certain third-party content, the Ninth Circuit recognizes that Section 230 immunizes a platform for its decision to allow or not allow third-party content.

84.   Section 230 expressly preempts conflicting state laws. It states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

**V.   AB 2655 imposes significant burdens on Rumble and its users, both compelling and restricting speech and forcing Rumble to police its users' speech.**

85.   AB 2655 imposes significant restrictions on Rumble's right to exercise its editorial discretion over the content on its webpage and compels its speech while at the same time forcing it to censor and compel its users' speech.

86.   Rumble exists to foster a free and open internet. Its content moderation policies and editorial discretion reflect that intent, which is why Rumble does not remove content unless it otherwise falls into a category of specifically prohibited content under Rumble's terms and conditions.

87.   As applied here, AB 2655 threatens Rumble with lawsuits and injunctions for displaying certain content on its platform it desires to display and refusing to label certain content it desires not to label.

88.   Rumble does not currently possess the tools to implement the censoring requirements of AB 2655, and creating those tools will be a substantial burden and cost to Rumble.

89.     Rumble enforces its terms and conditions through a complaint mechanism and through manual and technical review of content by independent contractors.

90.     Any person may email moderation@rumble.com to report content that the person believes violates Rumble's terms and conditions.

91.     Rumble reviews every report that it receives and a person on Rumble's content-moderation team will review the content to determine if it violates Rumble's terms and conditions.

92.     Rumble does not have any tools that allow it to identify or remove "materially deceptive content" (whatever that means in practice) targeted by AB 2655 without it being reviewed by a person.

93.     Rumble makes all content removal decisions after review by someone on Rumble's content-moderation team.

94.     Rumble lacks the tools to determine if media on its platform is "digitally created or modified" or if content is "identical or substantially similar" to media targeted by AB 2655.

95.     Rumble uses people on its content-moderation team to enforce its content-moderation policies, and it is often difficult if not impossible for a person to know if media is digitally altered or is identical or substantially similar to other media.

96.     Rumble has no way of "identify[ing]" content covered by AB 2655 without manual review of potentially millions of minutes of video or the development or acquisition of new technical tools, all of which would impose a cost-prohibitive burden on Rumble, and even then it would be extremely difficult if not impossible for Rumble to identify and then remove all content that third parties might consider to violate AB 2655 and demand that it be removed by Rumble, even if it did not violate Rumble's terms and conditions.

97.     AB 2655's Reporting Requirement will increase the number of complaints Rumble receives. Rumble will have to hire more employees or contractors to review and respond to the complaints.

1  98.  AB 2655 will require Rumble to undertake the impossible task of training its

2  content-moderation team on how to detect content that fits the inherently vague and

3  subjective definition of "materially deceptive." Rumble will have to instruct its content-

4  moderation team on how to make judgment calls about what content "would falsely

5  appear to a reasonable person to be an authentic record of the content depicted"; is

6  "reasonably likely to harm the reputation or electoral prospectives of a candidate"; is

7  "reasonably likely to falsely undermine confidence in the outcome" of elections; or

8  constitutes "satire or parody." Because these terms are subjective and vague, Rumble

9  would need to be overly restrictive in its censorship to avoid meritless enforcement

10  actions and litigation, further harming Rumble and its users.

11  99.  It would also be costly and burdensome for Rumble to build or purchase

12  technical tools to review content under AB 2655's subjective and vague definitions.

13  Rumble would have to spend enormous amounts of time and resources developing "state-

14  of-the-art techniques" (a term undefined by AB 2655) to identify, remove, and label

15  digitally altered content targeted by AB 2655 as required by the statute.

16  100.  And Rumble is unaware of any technical tools currently available that can

17  effectively detect the content targeted by AB 2655.

18  101.  Whether expression falls into these vague and overbroad categories depends

19  on the subjective perceptions of others, including state enforcement officials.

20  102.  AB 2655's exemption for "satire or parody" is also vague and difficult to

21  apply because individuals often disagree over whether something is or is not satire.

**ALLEGATIONS OF LAW**

23  103.  As a "large online platform," Rumble hosts, curates, and publishes content

24  that is subject to AB 2655.

25  104.  AB 2655 violates Rumble's constitutional and statutory rights.

26  105.  As a direct and proximate result of Defendants' violations of Rumble's

27  constitutional and statutory rights, Rumble has suffered and will suffer ongoing

28  irreparable harm, entitling it to declaratory and injunctive relief.

106.    Rumble does not have an adequate monetary or legal remedy for the loss of its constitutional and statutory rights.

107.    Unless Defendants are enjoined, Rumble will continue to suffer irreparable harm.

108.    In enforcing AB 2655, Defendants, their agents, and persons under their control act under the color and pretense of the law, statutes, ordinances, regulations, customs, usages, or policies of the State of California.

## CLAIMS

## COUNT ONE

**Violation of the First Amendment's Free Speech Clause and Free Press Clause**

109.    Rumble repeats and realleges each allegation contained in paragraphs 1–108 of this Complaint.

110.    The First Amendment's Free Speech Clause and Free Press Clause protect Rumble's ability to speak, including through its moderation of content on its website and its editorial discretion in choosing what content to display on its website. The Fourteenth Amendment incorporates the First Amendment against the States.

111.    The First Amendment protects Rumble's right to be free from content-, viewpoint-, and speaker-based discrimination, overbroad restrictions on speech, compelled speech, and vague laws allowing unbridled discretion by enforcement officials.

112.    The First Amendment also protects against a state government forcing Rumble to violate the free-speech rights of its users.

113.    As a "large online platform" that hosts, curates, and publishes third-party speech, Rumble has standing to assert the rights of its users who seek to use Rumble to engage in expressive activity and whose First Amendment rights are infringed by AB 2655.

114.    Rumble engages in activities protected by the First Amendment when it employs its editorial discretion and curates or moderates the content displayed on its platform.

115.    The First Amendment protects against a state government deputizing Rumble to violate the free speech rights of its users.

116.    AB 2655 uses governmental authority and the threat of punishment to coerce Rumble into punishing or suppressing its users' speech that Defendants disfavor.

117.    AB 2655 constitutes an impermissible and unreasonable restriction of protected speech because it burdens substantially more speech than is necessary to further any governmental interest.

118.    As applied and facially, AB 2655 bars and chills speech based on content and viewpoint.

119.    As applied and facially, AB 2655 is not content-neutral because it targets only "materially deceptive content," and only a certain subset of that kind of speech. Specifically, it targets speech that is "reasonably likely to harm the reputation or electoral prospects of a candidate" and speech that is "reasonably likely to falsely undermine confidence in the outcome of one or more election contests."

120.    As applied and facially, AB 2655 is also not content-neutral because it only regulates "materially deceptive content" directed at specific public offices and referenda, not all elections.

121.    AB 2655 is unconstitutional as applied to Rumble's speech and facially because AB 2655 is a content-, viewpoint-, and speaker-based regulation that bans, chills, and burdens Rumble's desired speech and requires Rumble to ban, chill, and burden its users' constitutionally protected speech.

122.    As applied and facially, AB 2655 compels speech by requiring large online platforms to create and display a label for certain content.

123.    As applied to Rumble, AB 2655 is vague and allows Defendants unbridled discretion to coerce Rumble to report, remove, and label speech and then discriminate based on content and viewpoint in determining whether to apply AB 2655.

124.    AB 2655 forces Rumble to either create a mechanism where viewers can report any user's posts or risk prosecution for not providing that mechanism.

125.  AB 2655 uses governmental authority and the threat of punishment to coerce Rumble and other large online platforms into punishing or suppressing their users' speech that Defendants disfavor.

126.  AB 2655 forces Rumble and other large online platforms to either remove "materially deceptive content" as vaguely and ambiguously defined by California or risk prosecution for not removing that content.

127.  AB 2655 forces Rumble to label "materially deceptive content" that is not otherwise removable with a label or risk prosecution for not labeling that content.

128.  AB 2655 is substantially overbroad in relation to any legitimate sweep and is facially unconstitutional for that reason.

129.  AB 2655 is substantially overbroad because it does not adequately define various material terms in the statute, including but not limited to "deepfake," "materially deceptive content," "harm the reputation or electoral prospects of a candidate," "falsely undermine confidence in the outcome of one or more election contests," "something that influences the election," and "satire or parody."

130.  AB 2655 also vests unfettered discretion in state officials to define these terms and coerce large online platforms to remove content in accordance with the officials' own subjective ends for election regulations.

131.  Accordingly, facially and as applied to Rumble and its users, AB 2655 violates the First Amendment.

## COUNT TWO

### Violation of the Fourteenth Amendment

132.  Rumble repeats and realleges each allegation contained in paragraphs 1–108 of this Complaint.

133.  The Fourteenth Amendment's Due Process Clause prohibits the government from censoring speech using vague standards that grant unbridled discretion to government officials to arbitrarily prohibit some speech and that fail to give speakers sufficient notice regarding whether their desired speech violates California's law.

134.   Due process requires that people of ordinary intelligence be able to understand what conduct a given statute or regulation prohibits.

135.   Statutes or regulations that fail to provide this fair notice and clear guidance are void for vagueness.

136.   Statutes or regulations that authorize or even encourage arbitrary or viewpoint discriminatory enforcement are void for vagueness.

137.   Rumble, its users, Defendants, and third parties of ordinary intelligence cannot know with certainty what content is prohibited by AB 2655.

138.   AB 2655 does not provide fair notice of what it prohibits.

139.   AB 2655 authorizes and encourages discriminatory enforcement.

140.   AB 2655 uses unconstitutionally vague phrases including but not limited to "falsely appear to a reasonable person to be an authentic record of the content depicted in the media," "reasonably likely to harm the reputation or electoral prospects of a candidate," "in connection with the performance of their elections-relate duties," "reasonably likely to falsely undermine confidence in the outcome of one or more election contests," "something that influences the election," and "satire or parody."

141.   Defendants can use that vagueness, and the unbridled discretion it provides, to apply AB 2655 in a way that discriminates against content, viewpoints, and actions Defendants disfavor.

142.   Accordingly, facially and as applied to Rumble and its users, AB 2655 violates the Fourteenth Amendment's Due Process Clause and chills free speech.

## COUNT THREE

### Article VI Supremacy Clause, Section 230 preemption

143.   Rumble repeats and realleges each allegation contained in paragraphs 1–108 of this Complaint.

144.   Article VI of the United States Constitution establishes "the Laws of the United States" as "the supreme Law of the Land." U.S. Const. art. VI.

145.    Under Article VI, Congress may enact statutes that expressly preempt state laws. Federal law that otherwise conflicts with a state law also can preempt that state law.

146.    Congress enacted Section 230 of the Communications Decency Act (47 U.S.C. § 230) to protect providers of "interactive computer services" from liability for their role as a publisher or speaker of third-party content.

147.    Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2).

148.    The Rumble platform is an "interactive computer service" under Section 230, and Plaintiffs Rumble Inc. and Rumble Canada Inc. are "provider[s]" of an "interactive computer service."

149.    The Communications Decency Act states that a "provider" of an "interactive computer service" shall not "be treated as the publisher or speaker of any information provided by" a content creator or commenter. 47 U.S.C. § 230(c)(1).

150.    The Act also expressly preempts inconsistent state laws and prevents the imposition of liability on an interactive computer service provider for its role as a publisher or speaker of third-party content. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

151.    The Ninth Circuit has held that because the role of a publisher includes "deciding whether to publish or to withdraw from publication third-party content, … Section 230 prohibits holding companies responsible for moderating or failing to moderate content." *Est. of Bride*, 112 F.4th at 1176, 1182 (cleaned up).

152.    AB 2655 requires Rumble to moderate its content by forcing it to remove and label "materially deceptive content." Because Section 230 prohibits state laws from

imposing liability on interactive computer service providers for their content-moderation decisions, Section 230 preempts AB 2655.

## PRAYER FOR RELIEF

Plaintiffs respectfully ask this Court to enter judgment against Defendants and provide the following relief:

1.    A preliminary injunction and a permanent injunction to stop Defendants and any person acting in concert with them from enforcing AB 2655 facially and as applied;

2.    A declaration that AB 2655 facially and as applied violates the First and Fourteenth Amendments;

3.    A declaration that Section 230 of the Communications Decency Act preempts AB 2655;

4.    An award of Plaintiffs' costs and expenses in this action, including reasonable attorney's fees, in accordance with 42 U.S.C. § 1988;

5.    The requested injunctive relief without a condition of bond or other security required of Plaintiffs; and

6.    Any other relief that the Court deems equitable and just in the circumstances.

DATED:      November 27, 2024


                                    */s/ Brian R. Chavez-Ochoa*
                                    Brian R. Chavez-Ochoa
                                    *Counsel for Plaintiffs*